IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 11 |
| KEDZIE/FULLERTON, LLC, | ) Case No. 11-19492 |
| an Illinois Limited Liability Company, | ) |
| | ) Judge Susan Pierson Sonderby |
| | ) |
| | ) Hearing Date: May 18, 2011 |
| Debtor/Debtor-in Possession. | ) Hearing Time: 10:00 a.m. |

**INTERIM ORDER AUTHORIZING DEBTOR TO:  (A) USE CASH COLLATERAL;
AND (B) GRANT CERTAIN LIENS AND PROVIDE ADEQUATE
PROTECTION AND OTHER RELIEF TO WHEATON BANK**

This matter came before this Court on the Motion of Kedzie/Fullerton LLC, an Illinois

limited liability company, ("Debtor") For Authority To Use Cash Collateral and For Related

Relief ("Motion"); Wheaton Bank (the "Bank") having consented to the Motion based upon the

terms of this Order; and this Court having heard and considered the Debtor's offer of proof.

This Court having examined the Motion, being fully advised of the relevant facts and

circumstances surrounding the Motion and having completed a hearing (the "Interim Hearing")

pursuant to Code §§ 361 and 363 and Fed. R. Bankr. P. 4001(b), and the Objection having been

resolved as set forth herein.

**THE MOTION IS GRANTED, AND, THE DEBTOR AND THE BANK HEREBY**

**STIPULATE AND AGREE AS FOLLOWS:**

A.     On the Filing Date, Debtor filed a voluntary petition for relief under

chapter 11 of the Code.  Debtor has retained possession of its property and continues to operate

its business as a debtor in possession pursuant to Code §§ 1107 and 1108.

BDDB01 6676633v1

B.     The Court has jurisdiction over the Case and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.     No Committee has been appointed in this Case.

D.     An immediate need exists for Debtor to use Cash Collateral in order to minimize disruption to and avoid the termination of its business operations, and to enhance the possibility of a successful reorganization.

E.     In order to prevent immediate and irreparable harm to the estate through the Termination Date, pending the Final Hearing (as defined below), Debtor needs to use Cash Collateral to pay the amounts set forth in the Budget as provided herein.

F.     The Bank is unwilling to consent to the use of Cash Collateral unless the Bank receives the adequate protection and additional consideration set forth in this Order. The Bank has consented to the terms of this Order and is entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, and 363 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

G.     The notice provided by Debtor of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P.2002, 4001(b) and 9014 and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     <u>Authorization of Use Cash Collateral</u>. Debtor is authorized to use Cash Collateral through June 30, 2011, solely: (a) in accordance with and pursuant to the terms and provisions of this Order; and (b) to the extent required to pay those expenses enumerated in the

Budget (a copy of which is attached hereto as Exhibit A) as and when such expenses become due

and payable; provided that Debtor may use Cash Collateral in excess of the amounts set forth in

the Budget (but in no event to exceed 10% of the budgeted amounts or such other increases as

may be agreed to in writing by the Bank and filed as an amended Budget with the Court, except

that in the event a particular expense budgeted for one month is not paid in such month, the right

to make such payment shall be permitted in subsequent months) with prior written approval of

the Bank or pursuant to further order of this Court.[1]

      2.     Replacement Liens. The Bank is hereby granted Replacement Liens as

adequate protection for any decrease in value of its interests in the Prepetition Collateral from

and after the Filing Date, to the extent and validity of the Bank's Prepetition Liens. The

Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be

First Priority Liens, subject only to Permitted Liens and the Prepetition Liens without the

execution, filing or recordation of any financing statements, security agreements, mortgages or

other documents or instruments; and (3) shall remain in full force and effect notwithstanding any

subsequent conversion or dismissal of the Case. Notwithstanding the foregoing, Debtor is

authorized and directed to execute and deliver to the Bank such financing statements, mortgages,

instruments and other documents as the Bank may deem reasonably necessary or desirable from

time to time. Nothing herein shall prejudice the Debtor's right to later challenge the validity,

extent, amount, perfection, priority or enforceability of the Prepetition Liens.

      3.     Allowed Code § 507(b) Claim. If and to the extent the adequate

protection of the interests of the Bank in the Aggregate Collateral granted pursuant to this Order

proves insufficient, the Bank shall have an allowed claim under Code §507(b) in the amount of

any such insufficiency.

---

[1] Capitalized terms not defined in this Order shall have the meanings ascribed to them on Exhibit B to this Order.

BDDB01 6676633v1

4.    Effect of Termination Date. Upon the written agreement of the Bank and the Debtor or upon the Termination Date without further notice or order of Court, Debtor's authorization to use Cash Collateral hereunder will automatically terminate. Any further use of Cash Collateral after the occurrence of the Termination Date shall be subject to the Bank's prior written consent or further order of this Court.

5.    Insurance. Debtor shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which Debtor is engaged, naming the Bank as a loss payee with respect thereto. To the extent not previously provided since the Filing Date, Debtor shall provide the Bank and the United States Trustee with written evidence of all such coverage (including, without limitation, evidence that the Aggregate Collateral is insured for the full replacement value thereof), as well as prompt notification of any change in such coverage that may hereafter occur.

6.    Miscellaneous Provisions.

(a)    Force and Effect. To the extent there exists any conflict amount the Motion, the Prepetition Documents, and prior orders of this Court authorizing Debtor's use of Cash Collateral and the terms of this Order, this Order shall govern and control.

(b)    Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to the Bank to the extent necessary to effectuate the provisions of this Order, and Debtor is hereby authorized to execute any additional agreements as the Bank may deem necessary to further effectuate and confirm the terms and conditions of this Order.

4

BDDB01 6676633v1

(c)    <u>Financial Information</u>. Debtor is hereby directed to deliver to the Bank such reporting and other financial information as and when the same is required pursuant to the Prepetition Documents (to be identified by the Bank), as well as a rolling, twelve (12) week budget, delivered to the Bank on or before May18, 2011, and a monthly variance report by Wednesday of the following week, comparing Debtor's actual performance to the Budget. The Bank shall have the right to inspect the Aggregate Collateral, as well as Debtor's books and records, during normal business hours upon reasonable advance notice to the Debtor. The Debtor shall make itself available to the Bank for periodic meetings upon reasonable advance notice to discuss relevant issues in this Case.

(d)    <u>No Waiver</u>. The Bank's failure, at any time or times hereafter, to require strict performance by Debtor (or by any Trustee) of any provision of this Order or Prepetition Documents, shall not waive, affect or diminish any right of the Bank thereafter to demand strict compliance and performance therewith. No delay on the part of the Bank in the exercise of any right or remedy under this Order or the Prepetition Documents shall preclude any other further exercise of any right or remedy. The Bank and the Debtor shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Code, or other applicable law unless such suspension or waiver is in writing, signed by a duly authorized officer of such party, and directed to the other party.

7.    <u>Binding Effect</u>. If this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability or effectiveness of any liens, security interests or nay other benefit or claim authorized hereby with

5

respect to any Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

8.    Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Case (1) confirming any chapter 11 plan; (2) converting the Case to a case under chapter 7; or (3) dismissing the Case. The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt is indefeasibly paid in full and discharged.

9.    Notice of Entry of Order/Final \Hearing. Debtor is directed to serve a copy of this Order as soon as practicable by first class mail, postage prepaid, on counsel for the Bank, counsel for any Committee, the United States Trustee, and the twenty largest creditors exclusive of tenants, which service shall constitute adequate and proper notice of the entry of this Order. The notice accompanying such service of this Order shall state that a hearing for this Court to consider entry of an order substantially similar to this Order on a final basis (the "Final Hearing") shall be held on June _21_, 2011 at _10:30_ Such notice shall further state that any party in interest objecting to the relief that will be sought on a final basis shall file written objections no later than seventy-two (72) hours prior to the Final Hearing. Notice of any material difference between this Order and the order Debtor shall present for entry at the Final Hearing shall be similarly served on or before June _14_, 2011.

6

10.    Effective Date.  This Order shall take effect and be fully enforceable as of

the Filing Date.

Hon. Susan Pierson Sonderby
United States Bankruptcy Judge

MAY 1 8 2011

Dated:_____, 2011

|                          | May       | June      | July      | August    |
|--------------------------|-----------|-----------|-----------|-----------|
| Opening Cash             | 40,250.13 | 52,761.75 | 68,103.08 | 84,244.41 |
| Rental Income            | 24,520.62 | 25,500.00 | 25,500.00 | 27,500.00 |
| Fee Income               |           |           |           |           |
| Intenet Fee              | 535.38    | 535.38    | 535.38    | 535.38    |
|                          | 25,056.00 | 26,035.38 | 26,035.38 | 28,035.38 |
|                          |           |           |           |           |
| Return check fee         | 34.00     | 34.00     | 34.00     | 34.00     |
| Bank Service Charges     | 320.00    | 320.00    | 320.00    | 320.00    |
| Interest Expense         |           |           |           |           |
| Finance Charge           | 0.00      | 0.00      | 0.00      | 0.00      |
| Security Deposit         | 0.95      | 0.95      | 0.95      | 0.95      |
| Total Interest Expense   | 0.95      | 0.95      | 0.95      | 0.95      |
|                          |           |           |           |           |
| Legal Fees               | 0.00      | 0.00      | 0.00      | 0.00      |
| Managment Fees           | 1,800.00  | 1,800.00  | 1,800.00  | 1,800.00  |
| Tax Escrow               | 1,802.33  | 1,802.00  | 1,802.00  | 1,802.00  |
| Office Supplies          | 110.80    | 110.80    | 110.80    | 110.80    |
| Property Insurance       | 547.24    | 547.24    | 547.24    | 547.24    |
| Real Estate Tax Attorney | 0.00      | 0.00      | 0.00      | 0.00      |
| Painting & Decorating    | 1,450.00  | 1,000.00  | 800.00    | 300.00    |
| Repairs                  | 1,000.00  | 1,000.00  | 800.00    | 800.00    |
| Janitor                  | 800.00    | 800.00    | 800.00    | 800.00    |
| Leasing Commissions      | 2,800.00  | 1,400.00  | 1,000.00  | 0.00      |
| Utilities                |           |           |           |           |
| Gas and Electric         |           |           |           |           |
| Internet                 | 410.00    | 410.00    | 410.00    | 410.00    |
| Pest Control             | 240.00    | 240.00    | 240.00    | 240.00    |
| Scavenger                | 691.98    | 691.98    | 691.98    | 691.98    |
| Water                    | 537.08    | 537.08    | 537.08    | 537.08    |
| Total Utilities          | 1,879.06  | 1,879.06  | 1,879.06  | 1,879.06  |
|                          |           |           |           |           |
| Net Income               | 12,544.38 | 10,694.05 | 9,894.05  | 8,394.05  |
|                          |           |           |           |           |
| Ending Cash              | 52,761.75 | 68,103.08 | 84,244.41 | 103,885.74 |



EXHIBIT

A

## EXHIBIT B

## DEFINED TERMS AND RULES OF CONSTRUCTION

### *Defined Terms*

1.    *Aggregate Collateral.*  Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.    *Budget.*  The budget attached to this Order as Exhibit A, as amended, modified or supplemented from time to time.

3.    *Case.*  This chapter 11 case or any superseding chapter 7 case of Debtor.

4.    *Cash Collateral.*  All "cash collateral," as that terms is defined in Code § 363(a) in which The Bank has an interest, all deposits subject to setoff rights in favor of The Bank, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including, without limitation, from the sale of inventory and the collection of accounts receivable.

5.    *Code.*  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

6.    *Committee.*  Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

7.    *Event of Default.*  Any one or more of the following:  (a) Debtor fails to perform any of its obligations in strict accordance with the terms of this Order; (b) the Case is dismissed or converted to a case under chapter 7 of the Code; (c) a Trustee is appointed or elected in the Case, or an examiner with the power to operate Debtor's business is appointed in this case; (d) the allowance of a motion for relief from the automatic stay allowing any creditor of Debtor to foreclose upon any material asset of Debtor's business or operation; or (e) the entry of any order in the Case staying, modifying, appealing or reversing this Order or that otherwise affects the effectiveness of this Order.

8.    *Filing Date.*  May 6, 2011

9.    *First Priority Liens.*  Liens that are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoffs, recoupment or deduction.

10.    *Permitted Liens.*  Collectively, (a) liens upon the Prepetition Collateral that as of the Filing Date (i) had priority under applicable law over the applicable Prepetition

Liens, (ii) were not subordinated by agreement or applicable law, and (iii) were non-avoidable, valid, properly perfected and enforceable; and (b) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

11.    *Postpetition Collateral.* All of the real and personal property of Debtor of any description whatsoever, wherever located, and whether existing or hereafter acquired, including all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities, (whether or not marketable), equipment, fixtures, real property interests, franchise rights, patents, tradenames, copyrights, intellectual property, general intangibles (excluding claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), tax refunds, actions, investment property and leases, and all proceeds, rents, issues, profits, products, substitutions and accessions, whether tangible or intangible, of any of the foregoing, including proceeds of insurance coverage any of the foregoing.

12.    *Prepetition Collateral.* All assets of the Debtor existing as of the Filing Date securing any of the Prepetition Debt, and all proceeds, rents, issues, profits and products thereof to the extent provided for under the Prepetition Documents.

13.    *Prepetition Debt.* All indebtedness or obligations owed by Debtor to The Bank under the Prepetition Documents including all fees, costs, interest, and other charges as of the Filing Date, plus all other interest fees costs and other charges allowable under Code § 506(b).

14.    *Prepetition Documents.* Collectively, the Promissory Note, the Construction Loan Agreement, the Business Loan Agreement, the Construction Mortgage, the Assignment of Rents, and any and all documents entered into in connection therewith.

15.    *Prepetition Liens.* The asserted security interests of The Bank in the Prepetition Collateral, subject only to Permitted Liens.

16.    *Replacement Liens.* First Priority Liens in the Postpetition Collateral granted to The Bank pursuant to this Order, subject only to the Prepetition Liens and the claim of the United States Trustee for the payment of fee under 28 U.S.C. § 1930(a).

17.    *Termination Date.* At The Bank's election, the earliest to occur of: (a) after the occurrence of an Event of Default, three (3) business days following the date on which The Bank provides, via facsimile or overnight mail, written notice to counsel for Debtor and counsel for any Committee of the occurrence of an Event of Default; (b) the date of the Final Hearing, if an order granting Debtor authority to use Cash Collateral on a final basis is not entered on such date; and (c) June___, 2011.

18.    *Trustee.* Any trustee appointed or elected in the Case.